**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Karina Hernandez,<br><br>                     Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>                     Defendant. | No. CV-20-02070-PHX-JAT<br><br>**ORDER** |

Pending before the Court is Plaintiff Karina Hernandez's appeal from the Commissioner of the Social Security Administration's ("SSA") denial of social security supplemental income. (Doc. 19). The appeal is fully briefed (Doc. 19, Doc. 25, Doc. 26), and the Court now rules.

**I.    BACKGROUND**

The issues presented in this appeal are whether Plaintiff was deprived of a valid adjudicatory process, whether substantial evidence supports the Administrative Law Judge's ("ALJ") determination that Plaintiff was not disabled from August 22, 2017, to May 26, 2020, and whether the ALJ committed legal error in her analysis. (Doc. 19 at 1).

**a.    Factual Overview**

Plaintiff was 40 years old at the date of her application. (Doc. 16-3 at 39). She has an 11th grade education and no past relevant work experience. (*Id.*). Plaintiff filed her social security supplemental income claim on August 22, 2017, alleging disabilities beginning on January 1, 2004, including degenerative disc disease of the cervical and

lumbar spine, clinical obesity, depression, and anxiety. (*Id.* at 31). An ALJ denied Plaintiff's claim on May 26, 2020. (*Id.* at 40). The SSA Appeals Council denied a request for review of that decision and adopted the ALJ's decision as the agency's final decision. (*Id.* at 2).

### b. The SSA's Five-Step Evaluation Process

To qualify for social security benefits, a claimant must show she "is under a disability." 42 U.S.C. § 423(a)(1)(E). A claimant is disabled if she suffers from a medically determinable physical or mental impairment that prevents her from engaging "in any substantial gainful activity." *Id.* § 423(d)(1)–(2). The SSA has created a five-step process for an ALJ to determine whether the claimant is disabled. *See* 20 C.F.R. § 404.1520(a)(1). Each step is potentially dispositive. *See id.* § 404.1520(a)(4).

At the first step, the ALJ determines whether the claimant is "doing substantial gainful activity." *Id.* § 404.1520(a)(4)(i). If so, the claimant is not disabled. *Id.* Substantial gainful activity is work activity that is both "substantial," involving "significant physical or mental activities," and "gainful," done "for pay or profit." *Id.* § 404.1572(a)–(b).

At the second step, the ALJ considers the medical severity of the claimant's impairments. *Id.* § 404.1520(a)(4)(ii). If the claimant does not have "a severe medically determinable physical or mental impairment," the claimant is not disabled. *Id.* A "severe impairment" is one which "significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* § 404.1520(c). Basic work activities are "the abilities and aptitudes necessary to do most jobs." *Id.* § 404.1522(b).

At the third step, the ALJ determines whether the claimant's impairment or combination of impairments "meets or equals" an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.* § 404.1520(a)(4)(iii). If so, the claimant is disabled. *Id.* If not, before proceeding to step four, the ALJ must assess the claimant's "residual functional capacity" ("RFC"). *Id.* § 404.1520(a)(4). The RFC represents the most a claimant "can still do despite [her] limitations." *Id.* § 404.1545(a)(1). In assessing the claimant's RFC, the ALJ will consider the claimant's "impairment(s), and any related

symptoms, such as pain, [that] may cause physical and mental limitations that affect what [the claimant] can do in a work setting." *Id.*

At the fourth step, the ALJ uses the RFC to determine whether the claimant can still perform her "past relevant work." *Id.* § 404.1520(a)(4)(iv). The ALJ compares the claimant's RFC with the physical and mental demands of the claimant's past relevant work. *Id.* § 404.1520(f). If the claimant can still perform her past relevant work, the ALJ will find that the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv).

At the fifth and final step, the ALJ determines whether—considering the claimant's RFC, age, education, and work experience—she "can make an adjustment to other work." *Id.* § 404.1520(a)(4)(v). If the ALJ finds that the claimant can make an adjustment to other work, then the claimant is not disabled. *Id.* If the ALJ finds that the claimant cannot make an adjustment to other work, then the claimant is disabled. *Id.*

### c. The ALJ's Application of the Factors

Here, at the first step, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of her disability. (Doc. 16-3 at 30).

At the second step, the ALJ determined that Plaintiff's degenerative disc disease of the cervical and lumbar spine, clinical obesity, depression, and anxiety constituted severe impairments under 20 C.F.R. 404.1520(c). (*Id.* at 31). The ALJ also determined that the rest of Plaintiff's alleged impairments were non-severe. (*Id.* at 31–32).

At the third step, the ALJ determined that Plaintiff's impairments did not meet the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 32). After evaluating Plaintiff's RFC, the ALJ concluded that Plaintiff could perform light work as defined in 20 C.F.R. 404.1567(b) "except with no more than frequent fingering, handling, and reaching overhead with the right upper extremity; occasional climbing of ramps and stairs, stooping, kneeling, crouching or crawling; no climbing ladders, ropes, and scaffolding; and she must avoid unprotected heights and hazardous machinery." (*Id.* at 34). The ALJ also found that Plaintiff is "limited to understanding, remembering, and carrying out simple tasks and job instructions; routine changes in the

workplace; and no more than occasional interaction with supervisors, coworkers, and the general public." (*Id.*)

At the fourth step, the ALJ concluded that Plaintiff has no past relevant work. (*Id.* at 39).

At the fifth step and final step, the ALJ concluded that given Plaintiff's age, education, work experience, and RFC, a significant number of jobs existed in the national economy that she could have performed. (*Id.*) Accordingly, the ALJ determined that Plaintiff was not disabled. (*Id.* at 40).

## II.   LEGAL STANDARD

This Court may not overturn the ALJ's denial of disability benefits absent legal error or a lack of substantial evidence. *Luther v. Berryhill*, 891 F.3d 872, 875 (9th Cir. 2018). "Substantial evidence means … such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)). On review, the Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the [ALJ's] conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Id.* (quoting *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014)). The ALJ, not this Court, draws inferences, resolves conflicts in medical testimony, and determines credibility. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984). Thus, the Court must affirm even when "the evidence admits of more than one rational interpretation." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). The Court "review[s] only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010.

## III.   DISCUSSION

Plaintiff raises four issues: (1) Plaintiff was deprived of a valid administrative adjudicatory process; (2) the ALJ committed legal error by failing to provide germane

reasons for rejecting the opinion of Ms. Hill LAC; (3) the ALJ erred in rejecting Plaintiff's symptom testimony; and (4) the Court should remand for an award of benefits or a new hearing. The Court addresses each in turn.

### a. Deprivation of a Valid Administrative Adjudicatory Process

Plaintiff's Opening Brief argues that the unconstitutional statutory removal restriction contained in 42 U.S.C. § 902(a)(3) violates the separation of powers and thus unconstitutionally tainted her disability application review at the agency level. (Doc. 19 at 11–13). In particular, Plaintiff argues that because the Commissioner of Social Security Andrew Saul was subjected to the unconstitutional statutory removal restriction, he did not have actual authority to delegate disability determinations to the ALJ. (Doc. 19 at 11). Additionally, Plaintiff vaguely argues that the "ALJ decided this case under regulations promulgated by Mr. Saul when Mr. Saul had no constitutional authority to issue those rules" without reference to any specific rules that were allegedly unconstitutionally applied in this case. (*Id.* at 12). Because Saul lacked such authority to delegate authority and promulgate rules, Plaintiff contends that the ALJ's decision is constitutionally defective and deserving of remand. (*Id.*)

The parties appear to agree that 42 U.S.C. § 902(a)(3) violates the separation of powers "to the extent it is construed as limiting the President's authority to remove the Commissioner without cause." (Doc. 25 at 4; Doc. 19 at 12–13). Instead, Defendant responds that regardless of the constitutionality of the Commissioner's statutory removal restriction, Plaintiff has not set forth an adequate reason to remand her unfavorable SSA disability benefits determination because Plaintiff has failed to show that the unconstitutional statutory removal restriction caused her actual harm under *Collins v. Yellen*, 141 S. Ct. 1761 (2021). (Doc. 25 at 4). The Court notes that since this appeal was filed, the Ninth Circuit issued an opinion in *Kaufmann v. Kijakazi*, 32 F.4th 843 (9th Cir. 2022) directly on point.

In light of the Ninth Circuit's recent decision in *Kaufmann*, the Court agrees with Defendant that Plaintiff failed to meet her burden under the test outlined therein and in

*Collins*.

Generally, restrictions on Presidential removal powers of an agency director violate the separation of powers and render an agency's structure unconstitutional. *Seila Law LLC v. CFPB*, 140 S. Ct. 2183 (June 20, 2020); *Collins v. Yellen*, 141 S. Ct. 1761, 1786–87 (2021). However, the Supreme Court recently held that plaintiffs must show "compensable harm" to seek legal remedies on this basis. *Collins*, 141 S. Ct. 1761 at 1787–89. First, the agency action complained of must have been taken by a director subject to an unconstitutional removal restriction. *Id.* at 1787. Additionally, plaintiffs must be able to point to some compensable harm that they suffered as a result of the unconstitutional removal restriction preventing a director's removal. *Id.* at 1789. The Ninth Circuit applied *Collins* in the specific context of a social security disability case in *Kaufmann*, holding that "unless a claimant demonstrates actual harm [from the unconstitutional provision], the unconstitutional provision has no effect on the claimant's case." 32 F.4th at 849–50.

A review of Plaintiff's Reply Brief is telling: Plaintiff did not respond to any of Defendant's arguments regarding Plaintiff's inability to show she suffered any actual harm from 42 U.S.C. § 902(a)(3)'s unconstitutional removal provision. (*See* Doc. 26). Indeed, the Court finds that Plaintiff failed to address the relevant test at all.

For Plaintiff to be entitled to relief under the test outlined in *Collins* and adopted in the social security context by the Ninth Circuit in *Kaufmann*, Plaintiff must show that her harm, in this case her unfavorable decision, was tied to the unconstitutional removal provision.

Plaintiff contends that her unfavorable decision resulted from the Commissioner's unconstitutional removal protections because such protections resulted in the Commissioner's unauthorized delegation of authority and promulgation of rules that affected the outcome of her disability determination. (Doc. 19 at 11). However, the *Collins* court made clear that "the unlawfulness of the removal provision does not strip [agency directors] of the power to undertake the other responsibilities of their office," particularly where there is no argument that the director was not properly appointed. *Collins*, 141 S.

Ct. at 1788, n.23 (citing *Selia Law*, 140 S. Ct. at 2207–11). Moreover, the Ninth Circuit rejected a claimant's argument in *Kaufmann* because it was not particularized to the claimant there. *Kaufmann*, 32 F.4th at 850. According to the Ninth Circuit, a claimant cannot be entitled to relief "without some evidence of *how* the Commissioner was inclined to exercise expanded authority with respect to the particular claimant." *Id.* (emphasis in original).

Here, Plaintiff has not met her burden to show actual harm because she "has presented neither evidence nor a plausible theory to show that the removal provision caused her any harm." *Id.* at 849–50. While Plaintiff alleges that Andrew Saul served as commissioner during her hearing (Doc. 19 at 11), the Court makes no judgment on whether Saul's tenure as commissioner tainted Plaintiff's adjudication because Plaintiff does not allege that the ALJ that presided over Plaintiff's case was appointed during Saul's tenure or otherwise received her authority to adjudicate social security claims from him. Moreover, Plaintiff does not specify which social security rules, if any, were promulgated by Saul during his tenure and applied in Plaintiff's case. Plaintiff "cannot meet her burden of showing actual harm with speculation alone." *Kaufmann*, 32 F.4th at 850.

Accordingly, because Plaintiff has not sufficiently alleged any actual, particularized harm and tied it to the unconstitutional statutory removal restriction in the Social Security Act, the Court declines to remand the case for a new hearing on this basis.[1]

### b. Opinion of Ms. Heidi Hill LAC

Plaintiff argues that the ALJ improperly rejected licensed associate counselor (LAC) Heidi Hill's opinion statement "for vague and illegal reasons." (Doc. 26 at 2).

Counselor Hill, in addition to other mental health specialists, treated Plaintiff several times over the course of Plaintiff's treatment at La Frontera EMPACT-SPC between October 2017 and January 2020. (Doc. 16-10 at 160–73; Doc. 16-19 at 3–5; Doc. 16-22 at

---

[1] In its Responsive Brief, Defendant also asserts that Plaintiff's request for remand "should be denied under the harmless error doctrine, the de facto officer doctrine, the rule of necessity, and broad prudential considerations." (Doc. 25 at 10). Because the Court finds that Plaintiff has failed to meet her burden under *Kaufmann* and *Collins* and is not persuaded to grant the Plaintiff's request for remand on the merits, the Court need not address Defendant's policy arguments.

- 7 -

7–10; Doc. 16-23 at 76–81, 88–89, 104; *see* Doc. 16-17 at 19–33; Doc. 16-18 at 1–29). As noted by the ALJ, in progress notes from both an August 2019 individual therapy session and an April 2019 group session, Ms. Hill documented that Plaintiff successfully attended group therapy and that Plaintiff stated she liked the group sessions and found them beneficial to her progress. (Doc. 16-3 at 37; Doc. 16-18 at 9–10; Doc. 16-22 at 9–10).

LAC Hill filled out a "Mental Medical Source Statement" on January 16, 2020, stating that she "is able to observe significant impairment to [Plaintiff's] executive functioning, memory recall, and ability to organize abstract information as result of symptoms of diagnosis." (Doc. 16-23 at 76–81). LAC Hill also states that Plaintiff "has shown improvement during sessions" but "struggles to regulate on her own." (*Id.*) LAC Hill identified Plaintiff's symptoms as follows: difficulty thinking or concentrating; disorientation to time and place; easy distractibility; generalized persistent anxiety; illogical thinking; memory impairment; mood disturbance; paranoid thinking or inappropriate suspicions; persistent disturbances of mood or affect; persistent irrational fear of a specific object, activity, or situation which results in a compelling desire to avoid the dreaded object, activity or situation; poverty of content of speech; and vigilance and scanning. (*Id.* at 77). Regarding Plaintiff's "mental abilities and aptitudes needed to do unskilled work," for most of the work-related activities listed on the form, LAC Hill checked the boxes for marked or extreme limitations, indicating that Plaintiff's ability to function independently, appropriately, and effectively on a sustained basis at those tasks is severely limited or nonexistent. (*Id.* at 3–4). For example, LAC Hill's opinion indicates that Plaintiff is incapable of understanding, remembering, or applying information; concentrating, persisting or maintaining pace; performing at a consistent pace without an unreasonable number and length of rest periods; and dealing with normal work stress for more than 20 percent of the workday. (*Id.*) As another example, LAC Hill's opinion indicates that, *inter alia*, Plaintiff can only maintain regular, punctual attendance, carry out very short and simple instructions, and make simple work-related decisions for approximately 11 to 20 percent of the workday. (*Id.* at 3). Regarding Plaintiff's ability to

ask simple questions or request assistance, accept instructions and respond appropriately to criticism from supervisors, get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes, and be aware of normal hazards and take appropriate precautions, LAC Hill noted that Plaintiff's ability is "limited, but satisfactory," indicating that these are the only tasks that Plaintiff would be able to successfully accomplish for 90 percent of the workday. (*Id.* at 4).

The ALJ addressed counselor Hill's opinion as follows:
> The undersigned finds the opinion of counselor Ms. Hill not persuasive (23F). Her assessed marked to extreme limitations are inconsistent with the claimant's lack of inpatient, partial hospitalization, or intensive outpatient treatment. Likewise, her assertion is contrary to the claimant having improved symptoms with medication and group therapy. Additionally, the claimant's mental status examination findings do not support the assessed marked and extreme limitations. Furthermore, the asserted need for four plus absences is speculative, outside her area of expertise and without support from the objective record.

(Doc. 16-3 at 38).

The law previously distinguished between the opinions of treating physicians, examining physicians, and non-examining physicians. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). This distinction was known as the "treating physician rule." *See Edlund v. Massanari*, 253 F.3d 1152, 1158 (9th Cir. 2001), as amended on reh'g (Aug. 9, 2001). "In March of 2017, [t]he Social Security Administration amended their regulations to abrogate the treating physician rule, among other changes." *Alonzo v. Comm'r of Soc. Sec. Admin.*, No. CV-18-08317-PCT-JZB, 2020 WL 1000024, at *3 (D. Ariz. Mar. 2, 2020) (citing *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5852–57 (Jan. 18, 2017)). The new regulations apply to claims filed on or after March 27, 2017. 20 C.F.R. §§ 404.1520c, 416.920c. The new regulations provide that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." *Id.*

Moreover, contrary to Plaintiff's arguments, under the new regulations, LAC Hill is now considered a medical source instead of a lay witness. 20 C.F.R. § 404.1502(d) (defining "medical source" as "an individual who is licensed as a healthcare worker by a State and working within the scope of practice permitted under State and Federal Law."). Because LAC Hill is a medical source and has provided a medical opinion in the form of a "Mental Medical Source Statement," (Doc. 16-23 at 76–81), the ALJ properly evaluated her statement as a medical opinion according to the updated regulations. 20 C.F.R. § 404.1513(a)(2). The regulations provide that the ALJ will consider all medical opinions according to several enumerated factors, including whether the opinion is supported by objective medical evidence and whether the opinion is consistent with the evidence from other sources. *Alonzo*, 2020 WL 1000024, at *3. Under the updated regulations, the ALJ must consider and explain how well the medical evidence supports the medical opinion and how consistent the medical opinion is with the record, and may, but is not required to, explain how the other factors under § 404.1520c(c)(3)–(5) are considered. 20 C.F.R. § 404.1520c(b)(3). And, "[w]hen the evidence before the ALJ is subject to more than one rational interpretation, [the court] must defer to the ALJ's conclusion." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004). This is so because "[t]he [ALJ] and not the reviewing court must resolve conflicts in evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (citations omitted).

Specifically, Plaintiff sets forth five arguments for why the ALJ erred in rejecting LAC Hill's medical opinion.

First, Plaintiff argues that the ALJ's conclusion that LAC Hill's "assessed marked to extreme limitations are inconsistent with the claimant's lack of inpatient, partial hospitalization, or intensive outpatient treatment" runs afoul of the Court's decision in *Ekola v. Colvin*, No. 2:13-cv-1812-HRH, 2014 WL 4425783 (D. Ariz. Sept. 9, 2014). (Doc. 19 at 14). In *Ekola*, the Court evaluated an ALJ's reasons to discredit a claimant's symptom testimony using the clear and convincing reasons standard. *Ekola*, 2014 WL 4425783 at

*6. The *Ekola* Court held that the ALJ erred in various ways, including by discrediting the claimant's testimony because the medical record had various reports that the claimant was not in "acute distress" at her appointment. *Id.* The Court explained that because the claimant's impairments were chronic conditions, whether the claimant appeared in acute distress was irrelevant to whether claimant was exaggerating her symptoms for her chronic impairments and did not constitute a sufficient justification to discredit her symptom testimony. *Id.*

Defendant responds that the ALJ's statement regarding the conservative nature of Plaintiff's treatment is "not equivalent to a consideration of whether a person was in acute distress when suffering from a chronic impairment. This was instead the ALJ evaluating the type of treatment Plaintiff received, in accordance with the regulations." Doc. 25 at 19 (citing 20 C.F.R. § 416.929(c)(3)(v)). The Court agrees that *Ekola* is distinguishable here. Nowhere does the ALJ opinion state that the ALJ discounted LAC Hill's opinion because Plaintiff was not in acute distress at her appointments. Instead, the ALJ properly evaluated the record and found that Plaintiff's treatment did not include inpatient, partial hospitalization, or intensive outpatient treatment, which would suggest that Plaintiff did not suffer from the extreme limitations noted in LAC Hill's opinion. *See* 20 C.F.R. 404.1529(c)(3)(v) (the ALJ will consider the type of treatment received for relief of symptoms); *see also Darden v. Saul*, 855 Fed. App'x 352, 354 (9th Cir. 2021) (not selected for publication) (finding the ALJ did not err in discounting treating physician's opinion where it was inconsistent with the claimant's daily activities, history of conservative treatment, and the physician's own treatment notes).

In reply, Plaintiff argues that the record fails to support a conclusion that its possible for her to have received more intensive treatment for her anxiety and depression, for which only medication and therapy are generally used. (Doc. 26 at 3). However, the Court does not find that argument persuasive because Plaintiff does not cite to any authority for her assertion that her mental health impairments can only be treated with medication and therapy when there are several other mental health treatments generally known, including

those identified in the ALJ's opinion, such as inpatient treatment, partial hospitalization, or intensive outpatient treatment. Instead, Plaintiff's treatment consisted of outpatient therapy in an individual setting once per month and in a group setting weekly. (Doc. 16-23 at 76). However, LAC Hill notes that Plaintiff only participated in the group sessions "intermittently," even though she was invited to attend and participate more frequently. (*Id.*) The Court finds that the ALJ did not err in finding LAC Hill's opinion unpersuasive in view of Plaintiff's conservative mental health treatment.

Second, Plaintiff contends that the ALJ erred by finding that LAC Hill's opinion "is contrary to the claimant having improved symptoms with medication and group therapy" without support from the record. (Doc. 19 at 14). In particular, Plaintiff argues that the ALJ improperly characterizes five pieces of evidence as supportive of the ALJ's decision that are actually inconsistent with a finding of non-disability. (Doc. 26 at 14). The Court notes that most of the evidence that Plaintiff points to are her own subjective symptom reports to her clinicians, which the ALJ properly discounted for the reasons addressed in the relevant section below. At best, those subjective statements merely corroborate Plaintiff's own properly discredited testimony. Where a treating physician's opinion is based "to a large extent" on "an applicant's self-reports and not on clinical evidence, and the ALJ finds the applicant not credible, the ALJ may discount the treating provider's opinion." *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (quoting *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008)).

Moreover, the Court declines Plaintiff's request to second guess the ALJ's reasonable interpretation of the evidence, even if such interpretation could give rise to inferences more favorable to Plaintiff. *See Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006). Prior to the ALJ's conclusion that LAC Hill's opinion is inconsistent with the record evidence, the ALJ's opinion sets out specific medical evidence in the record from various acceptable medical sources that the ALJ found to be both inconsistent with LAC Hill's opinion and consistent with improvement of Plaintiff's symptoms. For example, the ALJ found that in three treatment notes from 2019, Plaintiff was noted to have

improved mental health symptoms with therapy and medication. (Doc. 16-3 at 37); *see Warre v. Comm'r of the Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for purposes of determining eligibility for SSI benefits."). The Court has reviewed the records that the ALJ cites to for support and does not find that the ALJ interpreted any of the records erroneously. *See Andrews*, 53 F.3d at 1039–40 ("The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. We must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation.") (citations omitted).

Third, Plaintiff argues that the ALJ's finding that Plaintiff's "mental status examination findings do not support the assessed marked and extreme limitations" contained in LAC Hill's opinion is unsupported by the record. (Doc. 19 at 14–15). However, for several pages prior to discussing LAC Hill's opinion, though not always specifically labeling as such, the ALJ recounts specific consistent and inconsistent record evidence that both supports and undermines all the medical source's medical opinions, including LAC Hill's. (Doc. 16-3 at 34–38). As an example, the ALJ noted that Plaintiff "maintained generally good objective findings during mental status evaluations," referencing four treatment notes spanning from 2017 to 2019. (Doc. 16-3 at 37). The ALJ explained that during one of those treatment visits in August 2017, Plaintiff exhibited "appropriate interaction, well groomed, proper hygiene, relevant thought process, average intelligence, fair insight, good judgment and impulse control, and had no difficulty completing her activities of daily living." (*Id.*) In another example, the ALJ identified that Plaintiff's examination was "normal except for an anxious mood." (*Id.*)

In her reply brief, Plaintiff dissects each piece of evidence that the ALJ cited to and argues that the ALJ mischaracterized that evidence. (Doc. 26 at 4–5). However, the Court has reviewed the cited medical evidence in the record and finds the ALJ's interpretation of those records is supported by substantial evidence and free of legal error. It is the ALJ's responsibility, not this Court's, to determine credibility and resolve ambiguities in the

record evidence and the Court finds that the ALJ reasonably fulfilled that responsibility. Thus, the Court disagrees with Plaintiff's contention that the ALJ's finding is "vague and conclusory" and "without citation." (Doc. 19 at 14–15). *See Kennedy v. Colvin*, 738 F.3d 1172, 1178 (9th Cir. 2013) (stating that the ALJ is only required to discuss and evaluate the evidence that supports his conclusion; he is not required to do so in a specific location within the decision). Instead, the Court finds that substantial evidence supports the ALJ's determination that Plaintiff's mental impairments were not disabling.

Fourth, Plaintiff argues that the ALJ erred in finding that LAC Hill's opinion on Plaintiff's "asserted need for four plus absences is speculative, outside her area of expertise and without support from the objective record." (Doc. 19 at 15). According to Plaintiff, "[t]he volume of appointments alone supports this finding and mental health symptoms interfering with attendance is entirely within the expertise of a licensed associate counselor (LAC)." (*Id.*) However, even assuming that the ALJ erred in her determination that LAC Hill did not have the expertise to opine on Plaintiff's perceived need for work absences, any such error is harmless in view of the objective record evidence before the ALJ, as discussed at length above. *See Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015) ("ALJ errors in social security cases are harmless if they are 'inconsequential to the ultimate nondisability determination.'" (quoting *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006))).

Finally, in her Reply Brief, Plaintiff argues that the ALJ failed to address all of the factors in evaluating LAC Hill's medical opinion as required by 20 C.F.R. 404.1520c(a). However, as discussed above, under the updated regulations, the ALJ must consider and explain how well the medical evidence supports the medical opinion and how consistent the medical opinion is with the record, and may, but is not required to, explain how the other factors under § 404.1520c(c)(3)–(5) are considered. 20 C.F.R. § 404.1520c(b)(3). For the reasons discussed above, the Court finds that the ALJ properly evaluated the supportability and consistency factors regarding LAC Hill's opinion.

Accordingly, the Court finds that the ALJ's rejection of LAC Hill's opinion is

supported by substantial evidence in the record and is free from legal error.

### c. Subjective Symptom Testimony

Plaintiff argues that the ALJ improperly discounted her subjective testimony without providing clear and convincing reasons for doing so. (Doc. 19 at 15). Plaintiff contends that the ALJ's rejection of Plaintiff's testimony was overly generalized and did not specifically list out reasons that the testimony was not credible. (*Id.* at 16). Plaintiff further asserts that the ALJ improperly relied on Plaintiff's daily activities as a stay-at-home mother without proper support in the record regarding the scope of those activities. (*Id.* at 18–19).

The ALJ noted that "Plaintiff alleged disability due to anxiety, depression, insomnia, headaches, as well as neck, back, right hand, knee, and ankle pain following an October 2017 motor vehicle accident." (Doc. 16-3 at 34). Plaintiff and her husband submitted statements averring that Plaintiff impairments affect her "abilities to lift, squat, bend, stand, reach, walk, sit, kneel, talk, hear, climb stairs, see, use her hands, remember, complete tasks, concentrate, follow instructions, get along with others, and understand." (*Id.*) Plaintiff testified that she has "irritability, constant worry and depression, fearfulness, crying spells, panic attacks, difficulty focusing, social isolation, trouble concentrating, memory deficits, and difficulty going out in public" and that she has diminished daily functioning and difficulty caring for herself and her children. (*Id.*)

The Ninth Circuit has established a two-step analysis for an ALJ to determine whether to credit a claimant's subjective symptom testimony. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017) (quoting *Garrison*, 759 F.3d at 1014–15). If the claimant presents such evidence, the ALJ then evaluates the claimant's subjective complaints. *See id.* "In evaluating the credibility of pain testimony after a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical

- 15 -

evidence to fully corroborate the alleged severity of pain." *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). Instead, an ALJ must provide "specific, clear, and convincing reasons" or doing so. *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014).

An ALJ's credibility determination "must rely either on reasons unrelated to the subjective testimony (e.g., reputation for dishonesty), on conflicts between her testimony and her own conduct, or on internal contradictions in that testimony." *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). In analyzing whether to discount a claimant's testimony, "[t]he ALJ must identify the testimony that was not credible and specify 'what evidence undermines the claimant's complaints.'" *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)). The ALJ's findings "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p, 82 Fed. Reg. 49462, 49467 (Oct. 25, 2017). If the ALJ path cannot "reasonably be discerned," the ALJ's decision must be reversed. *Treichler*, 775 F.3d at 1103.

While an ALJ may not reject a claimant's subjective complaints based solely on lack of objective medical evidence to fully corroborate the alleged symptoms, *see Rollins v. Massanari*, 261 F.3d 853, 856–57 (9th Cir. 2001); *Fair v. Bowen*, 885 F.2d 597, 602 (9th Cir. 1989), the lack of objective medical evidence supporting the claimant's claims may support the ALJ's finding that the claimant is not credible. *See Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2003). Factors that the adjudicator may consider when making such credibility determinations include the nature, location, onset, duration, frequency, radiation, and intensity of any pain, precipitating and aggravating factors (e.g., movement, activity, environmental conditions), type, dosage, effectiveness, and adverse side-effects of any pain medication, treatment, other than medication, for relief of pain, functional restrictions, and the claimant's daily activities. *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991) (en banc) (citing SSR 88–13, 1988 WL 236011 (July 20,

1988)). "Although an ALJ 'cannot be required to believe every allegation of disabling pain,' the ALJ cannot reject testimony of pain without making findings sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (quoting *Bunnell*, 947 F.2d at 345–46 and *Fair*, 885 F.2d at 603).

Here, at the first step, the ALJ determined that "the claimant's medically determinable impairments could reasonably be expected to produce some of the symptoms of the types alleged." (Doc. 16-3 at 36). At the second step, however, the ALJ determined that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." The ALJ first reasoned:

> The record fails to fully substantiate the claimant's allegations of disabling symptoms. The undersigned notes that the claimant functions as a stay-at-home mother to her children, some of whom have medical problems. Treatment notes show that her husband works and lives out of town regularly as well as prefers the claimant to stay at home with the children (5F-13, 7F-3, 8F-2, 18F-206). Thus, the claimant's parental obligations provide an alternate explanation to her minimal work history, as opposed to disabling symptoms.

(Doc. 16-3 at 36). With respect to Plaintiff's physical impairments, the ALJ noted:

> The claimant also has not required surgical intervention for her cervical or lumbar spine impairments. Instead, she had regularly maintained a steady gait, intact sensation and coordination, symmetrical reflexes, as well as full (5/5) strength in her upper and lower extremities despite her spinal impairments and clinical obesity (12F-2, 14F-6, 19, 16F-1-2, 8-9, 25F-490, 500, 536-537, 554-555, 26F-9). Additionally, by June 2018, the claimant reported having negative straight leg raise testing (25F-483). Furthermore, treatment records show the claimant having relief with various pain treatment modalities (25F, 26F).
> In addition, the claimant has maintained normal cardiac and respiratory findings despite her clinical obesity (25F-187, 366). Likewise, imaging of her chest was negative (26F-2).

(*Id.* at 36–37).

With respect to Plaintiff's mental impairments, the ALJ noted that Plaintiff "has not required inpatient treatment, partial hospitalization, or intensive outpatient treatment for her mental health conditions" and has "maintained generally good objective findings during mental status examination." (*Id.* at 37). The ALJ also cited to the results of Plaintiff's various mental health examinations from 2017 to 2020 to support her finding that Plaintiff's mental health symptoms improved with medication and treatment, as discussed above regarding LAC Hill's opinion. (*Id.*)

After a considerable discussion of the record evidence in this case that both supports and contradicts Plaintiff's testimony, the ALJ concluded:
> The claimant's receipt of no more than conservative care without need for hospitalization, improved symptoms with medication, treatment and therapy, and objective physical and mental status examination findings showing no more than moderate findings, all support the conclusion that the claimant is not as limited as alleged. Instead, she remains capable of performing work within the restrictions set forth herein.

(*Id.* at 37).

The Court finds the ALJ's provided reasons adequately supported by the record. (Doc. 16-3 at 36–37 citing Doc. 16-10 at 52–53, 58, 147–52, 155–57; Doc. 16-11 at 21, 73, 86; Doc. 16-12 at 2–3, 9–10; Doc. 16-17 at 17; Doc. 16-18 at 9; Doc. 16-19 at 29; Doc. 16-20 at 2–3; Doc. 16-21 at 20; Doc. 16-23 at 86, 94, 96; Doc. 16-25 at 82; Doc. 16-27 at 19; Doc. 16-28 at 39, 46, 56, 92–93, 110–11; Doc. 16-29 at 3, 10). The Court also finds that this evidence provides clear and convincing reasons for discounting Plaintiff's testimony. As noted above, Plaintiff testified that Plaintiff impairments affect her "abilities to lift, squat, bend, stand, reach, walk, sit, kneel, talk, hear, climb stairs, see, use her hands, remember, complete tasks, concentrate, follow instructions, get along with others, and understand." (*Id.* at 34) Plaintiff also testified that she has "irritability, constant worry and depression, fearfulness, crying spells, panic attacks, difficulty focusing, social isolation, trouble concentrating, memory deficits, and difficulty going out in public" and that she has diminished daily functioning and difficulty caring for herself and her children. (*Id.*). However, the ALJ observed, and the Court agrees, that Plaintiff was noted to repeatedly

"maintain[] a steady gait, intact sensation and coordination, symmetrical reflexes, as well as full (5/5) strength in her upper and lower extremities despite her spinal impairments and clinical obesity" and had "relief with various pain treatment modalities." (*Id.* at 36–37) (citations omitted). Regarding her mental health limitations, the ALJ properly found Plaintiff's testimony inconsistent with medical evidence establishing that Plaintiff did not require inpatient treatment or hospitalization and "maintained generally good objective findings during mental status examination." (*Id.* at 37).

Because a substantial portion of the record evidence appears to conflict with Plaintiff's subjective account of her limitations, as discussed in the ALJ's opinion, the ALJ did not err in determining that the record evidence was not entirely consistent with Plaintiff's subjective assessment of her symptoms. Moreover, these findings are factual determinations solely within the ALJ's responsibility and not for this Court to second guess. *Andrews*, 53 F.3d at 1039.

In addition to inconsistency with the medical evidence, the ALJ relied on Plaintiff's inconsistency in her own past symptom reports to her treatment providers as a basis for discrediting her subjective symptom testimony. For example, while Plaintiff alleges that her physical impairments affect her ability to "lift, squat, bend, stand, reach, walk, sit, kneel, [and] climb stairs," the ALJ noted that Plaintiff "reported having negative straight leg raise testing" and "relief with various pain treatment modalities" to her treatment providers. (Doc. 16-3 at 34, 36–37). The ALJ did not err by relying on these inconsistencies in Plaintiff's own statements. *Khanishian v. Astrue*, 238 Fed. App'x 250, 252–53 (9th Cir. 2007) (holding that inconsistent statements are "appropriate" to consider in a credibility determination).

Plaintiff's inconsistent statements, taken together with Plaintiff's testimony being inconsistent with the medical evidence, provide two clear and convincing reasons to discount Plaintiff's symptom testimony. And although Plaintiff argues that the ALJ improperly relied on Plaintiff's activities as a stay-at-home mother without proper support in the record, the Court finds that any such error is harmless in view of the ALJ's other

valid reasons for discounting Plaintiff's subjective testimony. *See Treichler*, 775 F.3d at 1099 ("An error is harmless … if the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity.") (citations and internal quotation marks omitted).

Therefore, the ALJ did not err on this ground.

### d. Further Proceedings

Finally, Plaintiff requests a remand for computation of benefits under the Ninth Circuit's credit-as-true doctrine, or, in the alternative, requests a remand for a new hearing. (Doc. 22 at 6–7, 11). Specifically, Plaintiff argues that if her own symptom testimony is credited, she would properly be found disabled because she would be unable to sustain past or alternative work based on the Vocational Expert testimony at the hearing. (*Id.*) However, because the Court is affirming the ALJ's decision, the Court denies Plaintiff's request for a remand without considering the credit-as-true doctrine. *See Leon v. Berryhill*, 880 F.3d 1041, 1047 (9th Cir. 2017), *as amended* (Jan. 25, 2018) (A direct award of benefits is proper "only when the record clearly contradicted an ALJ's conclusory findings and no substantial evidence within the record supported the reasons provided by the ALJ for denial of benefits").

## IV.  CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that the ALJ's decision is **AFFIRMED**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment accordingly.

Dated this 23rd day of June, 2022.

_____
James A. Teilborg
Senior United States District Judge